IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DRUMMOND COMPANY INC, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, <br><br> Defendant. | CIVIL ACTION NO. <br><br> 2:15-cv-01491-WMA |

### DECLARATION OF LouAnn GROSS

1. I, Lou Ann Gross, declare that the following statements are true and correct to the best of my knowledge and belief and that they are based upon my personal knowledge, information acquired by me in the course of performing my official duties, information contained in the records of the United States Environmental Protection Agency ("EPA" or "the Agency"), and/or on information provided to me by my employees in the Freedom of Information and Records Management Section at the EPA Region 4.

2. I have served as the Chief of the Freedom of Information and Records Management Section for EPA Region 4, since April 2006. From September 1988 to April 2006, I served as the Region 4 Freedom of Information Act Paralegal in the Office of Regional Counsel. Prior to that, I served as the Litigation and Freedom of Information Act Paralegal for the Securities and Exchange Commission in the Atlanta Regional Office. I have over 34 years of experience as an access professional. As Chief of the Freedom of Information Act and Records

1

Management Section, I lead eleven EPA employees in delivering services and support to the Agency in Records Management, Library Services, Privacy, and Freedom of Information Act ("FOIA"). 5 U.S.C. § 552.

3. This declaration provides factual background information, describes EPA's response to the FOIA requests that Mr. Tal Simpson submitted on July 28, 2014 and October 10, 2014 on behalf of Plaintiff, Drummond Company Inc. This declaration also explains EPA's decision to withhold, pursuant to FOIA exemptions, of responsive records. The attached *Vaughn* indexes contain additional detail about each redaction.

4. I am personally familiar with the FOIA requests that Mr. Simpson submitted on July 28, 2014 and October 10, 2014.

I. BACKGROUND.

A. 35th Avenue Superfund Site.

5. EPA Region 4 Superfund Division, Emergency Response Removal and Prevention Branch ("ERRPB") responds to chemical, oil, biological, and radiological releases and large-scale national emergencies, including homeland security incidents. The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., commonly known as Superfund, in conjunction with Executive Order 12580 and EPA delegations of authority, provide EPA Region 4's ERRPB the authority to initiate the cleanup of hazardous waste sites and to order potentially responsible parties to perform cleanups and to seek reimbursement to the government for EPA-led cleanups. ERRPB, generally, provides support when requested or when state and local first responder capabilities have been exceeded. ERRB conducts removal actions to protect public health or welfare, or the environment.

6. The underlying FOIA requests seek Agency records related to EPA's action at the 35th Avenue Superfund Site ("35th Ave. Site" or "Site") located in a mixed industrial and residential area of Birmingham, Alabama. The 35th Ave. Site is an area of observed contamination ("AOC") containing lead, arsenic, and benzo(a)pyrene (BaP)-contaminated soil. The contamination comes from multiple possible industrial sources.

7. At Superfund Sites like 35th Ave., EPA attempts to identify the parties responsible for generating and transporting the hazardous waste related to the site, also known as potentially responsible parties ("PRPs"), and typically oversees cleanup at the Site. PRPs can be individual people, companies, and/or municipalities, amongst others. EPA generally asks a PRP or PRPs to conduct and/or pay for studies and activities associated with the response action. If the PRPs refuse to participate, EPA may clean up the site and sue the responsible party or parties to recover costs. 42 U.S.C. §§ 9604, 9606, 9607(a).

8. On Friday, September 20, 2013, EPA informed Drummond Company, Inc. that it is a PRP at the 35th Ave. Site and that Drummond may be responsible under CERCLA for cleanup of the Site or costs EPA incurs in cleaning up the Site. After unsuccessful negotiation attempts with Drummond and other PRPs, EPA proceeded with the cleanup.

9. At the 35th Ave. Site, ERRPB oversaw residential soil sampling at over 1,000 properties in the 35th Ave. study area. Of the properties sampled, nearly 400 are contaminated above levels of concern. EPA continues its remediation efforts and sampling from other potentially contaminated residential properties.

**B.    Gasp's Petition for Preliminary Assessment of Release of Hazardous Substances by ABC Coke/Drummond Company.**

10. On July 1, 2014, a non-profit community group, Gasp, submitted to EPA, pursuant to CERCLA, 42 U.S.C. § 9605(d), a petition for preliminary assessment ("PA") of

3

release of hazardous substances by an ABC Coke facility (owned by Drummond Company, Inc., "ABC Coke/Drummond") adjacent to the 35th Ave. Site.

11. On August 27, 2014, ABC Coke/Drummond submitted its response to Gasp's petition. In its response, ABC Coke/Drummond objected to EPA's proposal to perform a PA and argued that EPA should deny the Petition because Gasp presented no evidence of a release or threat of release that might require a response at the ABC Coke/Drummond facility or the neighboring area.

12. Ultimately, EPA decided to proceed with the PA, and on June 29, 2015 the Agency completed the PA Report of the Pinson Valley Neighborhood Site (now also referred to as South Tarrant Neighborhood). EPA concluded that a Site Inspection was warranted to further evaluate the Site. EPA's Site Inspection continues today.

## II. TWO FOIA REQUESTS PROCESSED BY REGION 4.

### A. FOIA Request EPA-R4-2014-008895 (35th Avenue Site).

13. On July 28, 2014, Mr. Simpson submitted a FOIA request via FOIAonline, the Agency's internet-based FOIA tracking system. From FOIAonline, requesters can submit FOIA requests, track the status of requests, search for requests submitted by others, and access previously released records. The request sought "any and all records related to the 35th Avenue Superfund Site. All records released to date and any records in forthcoming productions." FOIAonline assigned the request tracking number EPA-R4-2014-008895. Ex. A.

14. On July 28, 2014, the R4 FOIA Program received the request and assigned it to Ms. Gayla Mendez, Government Information Specialist, for processing. On July 29, 2014, the Agency sent a letter to the requester that provided an estimated completion date of August 15, 2014. Ex. B.

15.     On August 15, 2014, Ms. Mendez spoke with Mr. Simpson to explain that the FOIA Program needed additional time to provide a final response. During this conversation, Ms. Mendez explained to Mr. Simpson that the Agency planned to conduct its search for responsive records in the Superfund Document Management System ("SDMS") because SDMS was the Superfund program's official record keeping system. Mr. Simpson agreed that an SDMS search was satisfactory to fully comply with the FOIA request. In light of this agreement, SDMS was the location reasonably likely to contain all responsive records.

16.     *Search*. To produce all records responsive to the request, Ms. Mendez coordinated with an SDMS administrator to capture and produce all responsive records in the SDMS 35th Ave. Site file. Then, an SDMS administrator provided the records to Ms. Mendez and the FOIA Program staff.

17.     *Review*. Ms. Mendez and the FOIA Program staff reviewed the records for FOIA exempt information and worked with an SDMS administrator to make the corresponding redactions. When the review and redaction processes were completed, an SDMS administrator produced CDs for Ms. Mendez that contained the non-exempt, partially exempt and fully exempt records along with an index that lists each record, provides a brief description of each record, and cites any applicable FOIA exemptions.

18.     *Productions*. On September 9, 2014, EPA sent its final response to Mr. Simpson. The final response included an index of approximately 382 records. The agency withheld in full approximately 378 records and withheld in part approximately 3 records.

19.     On or about September 29, 2014, separately from this FOIA request, Mr. Simpson asked for and EPA Region 4's Superfund Division provided HRS documentation records to Mr. Simpson and other interested parties. That September 29, 2014 production included

approximately 20 records that the Agency initially withheld in full in its September 9, 2014 final response. The *Vaughn* index reflects this additional release.

20.     After the Plaintiff filed the complaint that initiated this lawsuit, EPA staff re-reviewed the 382 records. On January 11, 2016, EPA released in full or in part approximately 268 responsive records that it previously withheld in full. Of those 268 records, the Agency released 253 responsive records in full and released 15 responsive records in part. The redactions made to the 15 records released in part are explained in the attached *Vaughn* index. Ex. C.

21.     On March 23, 2016, EPA released approximately 74 additional responsive records that it previously withheld in full. Of those 74 records, the Agency is releasing approximately 45 responsive records in full and releasing approximately 29 responsive records in part. The redactions made to the approximately 29 records released in part are explained in the attached *Vaughn* index. *Id.*

22.     In total, EPA continues to withhold in full approximately 14 responsive records and withhold in part approximately 43 records. The *Vaughn* index explains all withholdings. *Id.*

    **B.**    **FOIA Request EPA-R4-2015-000406 (Gasp Petition concerning Tarrant, Alabama).**

23.     On October 10, 2014, Mr. Simpson submitted a FOIA request via FOIAonline. The FOIAonline system assigned the request tracking number EPA-R4-2015-000406. The request asked for "any and all EPA records relating to the July 14, 2014 petition for PA in Tarrant (North Birmingham), Alabama, submitted to EPA by the organization Gasp." Ex. D.

24.     On October 14, 2014, the R4 FOIA Program assigned the request to Ms. Mendez.

25.     ***First Search, Review and Production***. That day, Ms. Mendez determined that the responsive records would be reasonably likely to be located in the files of individual employees and/or within those employees' email records. Next, Ms. Mendez created a list of approximately

15 EPA employees that were reasonably likely to possess responsive information. Ms. Mendez requested that the employees search their readily retrievable files for any responsive records. Within one day, custodians located four responsive records. Ms. Mendez reviewed those four responsive records and determined that the records could be released in full.

26.     The following day, October 15, 2014, in its first partial response, EPA released those four records to Mr. Simpson. In a letter accompanying the records, EPA explained to Mr. Simpson that a separate search was underway and the Agency would likely locate and disclose additional responsive records. Ex. E.

27.     *Additional Search*. EPA's Office of Environmental Information ("OEI") maintains the Agency's email system and is generally responsible for performing centralized electronic searches of email files on behalf of program offices. Ms. Mendez gave the list of approximately 15 record custodians and two key words, "Gasp Petition" and "Tarrant", to OEI and asked that OEI conduct an email search for email documents to or from the specified custodians containing those key words.

28.     OEI sent the search results to Ms. Mendez on October 21, 2014. OEI's initial email search returned approximately 1125 megabytes of potentially responsive records. Before reviewing the potentially responsive records, EPA informed Mr. Simpson that the search generated approximately 1125 megabytes of information, and that the subsequent review process would be labor intensive and time consuming. In an effort to provide responsive records in a timely fashion, EPA asked Mr. Simpson via email to "identify from the list of record holders below the email authors you are interested in searching by priority." In a November 11, 2014 email, Mr. Simpson agreed and placed each custodian into one of three priority groups.

29. *Additional Reviews*. According to the priority list, Ms. Mendez and the FOIA Program began reviewing records for responsiveness and FOIA exempt content. During review, Ms. Mendez and the FOIA Program determined that a significant portion of the documents were either non-responsive or duplicative. Additionally, the FOIA staff redacted content they determined to be exempt from FOIA and created an index that provides a brief description of each record and cites any applicable FOIA exemptions.

30. *Additional Productions*. By letter dated December 1, 2014, EPA provided Mr. Simpson with its second partial response. Ex. F. That response released in full 3 records, released in part 12 records, and withheld in full 25 records. By letter dated December 17, 2014, EPA sent its third and final response to Mr. Simpson. Ex. G. The Agency's final production released in full 11 records, released in part four records, and withheld in full 20 records.

31. After the Plaintiff filed the complaint that initiated this lawsuit, EPA re-reviewed, all 16 records originally withheld in part. Upon re-review, on December 21, 2015, the Agency released in full seven records, and released in part, with reduced redactions, nine records.

32. In December 2015 and January 2016, EPA re-reviewed the 45 records it originally withheld in full. Upon re-review, on January 11, 2016, EPA released in full 27 records, and released in part 18 records. On March 23, 2016, EPA released in full one additional record that it previously withheld in part.

33. Ultimately, as described in the further detail in the attached *Vaughn* index, EPA released in full 53 responsive records, released in part 26 responsive records, and is not withholding any records responsive to this request in full. Ex. H.

### III.     *VAUGHN* INDEX AND WITHHELD RECORDS.

   A.     35th Avenue Request *Vaughn* Index.

34. The *Vaughn* index for the 35th Ave. request explains all exemptions applied to the withheld in full and withheld in part records. Ex. C. The Agency made the majority of its withholdings pursuant to Exemption 5's deliberative process privilege. The Agency also withheld portions of some records under Exemptions 4 and 6.

      **1.** *Exemption 5 Deliberative Process Privilege.*

35. EPA applied Exemption 5's deliberative process privilege to a majority of withheld documents responsive to the 35th Ave. request. The documents or portions of documents withheld under Exemption 5's deliberative process privilege include internal briefing reports and presentations, handwritten notes and agendas, and letters and emails about the PRP search. The withheld documents or portions of documents were not circulated outside the U.S. Government.

36. EPA Region 4's deliberative process often involves the creation of briefing reports and presentations by staff-level employees and contractors used to help the Agency's decision-makers formulate decisions which culminate in EPA actions regarding a Superfund site such as the 35th Ave. Site. The records are deliberative because they reflect back-and-forth discussions between Agency staff working to accurately describe, and then ultimately communicate, issues and options to their managers and other Agency officials regarding the Site.

37. The withheld handwritten notes and agendas generally contain present sense impressions, recommendations, analyses, opinions, and advice pertaining to the ongoing actions at and relating to the 35th Ave. Site. These records reflect the give-and-take conversations and thought processes necessary for the Agency to determine the nature and extent of its engagement with the PRPs and other parties involved with the 35th Ave. Site. The withheld information does not represent an official Agency decision or policy and instead reflect only the thoughts of the

9

note-taker, or the then-current topics of key decision points or issues for discussion among staff. Notes and agendas are a small step in an ongoing process that has many incremental actions and decision-points prior to any EPA activity at the site.

38.     The letters and emails transmitting PRP search report contain recommendations and options provided by EPA staff to management about whether certain companies could be PRPs. When these records were created, the Agency had not made final decisions about naming and identifying the 35th Ave. PRPs. At the time of the discussions, EPA was deliberating on the best Agency-wide approach for coordinating its response at the 35th Ave. Site, and specifically the process to determine whether an entity is a PRP. Typically, the authors of the withheld documents or portions of documents do not have final decision-making authority. The withheld information is deliberative because EPA employees and managers were still engaged in internal discussion regarding PRP status.

39.     Release of these deliberative documents would have a chilling effect on the Agency's ability to have frank, internal discussions among federal agency staff about the issues involved in and actions taking place at the 35th Ave. Site. Disclosure of these deliberative documents would severely hamper the efficient day-to-day workings of EPA because individuals would fear their discussions and ideas would be released to the public, and would be hesitant to communicate candidly. The resulting lack of candor would impact EPA's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making and is necessary for the preparation of accurate briefings and presentations. Agency decision-making is at its best when employees are able to focus on the substance of their views and not on whether their individual views may be made publicly available. Furthermore, release would cause public

confusion due to disclosure of reasons and rationales that were not in fact the ultimate grounds for EPA final decisions or actions.

### 2. *FOIA Exemption 5 Attorney Client Privilege.*

40. EPA relies on the Attorney Client privilege for confidential communications between Agency attorneys and Agency clients when those communications relate to legal advice concerning activities at the 35th Ave. Site, including numerous questions related to CERCLA, other laws, and their implementing regulations. Agency attorneys are relied upon to provide legal advice and counsel to EPA client offices. These attorney-client communications take place regularly in response to an Agency client's inquiry to an attorney about different legal options and requirements with respect to actions involving the site. The withheld attorney-client communications here touch on several legal matters including subpoena responses, an agenda drafted by an attorney for clients, and enforcement strategies in hand written notes taken by a client in discussion with counsel. The withheld portions of documents were shared only with those with a need to know within the Agency.

### 3. *FOIA Exemption 4.*

41. FOIA Exemption 4 protects from disclosure privileged or confidential trade secrets and commercial or financial information. Pending further evaluation, the Agency is withholding approximately seven responsive records or portions of records claimed as confidential business information ("CBI") by the affected businesses. These records include one letter and other supporting documentation from three affected businesses in response to CERCLA Section 104(e) information requests. Pursuant to EPA's regulations 40 C.F.R. § 2.204(d)(1)(ii), at the time of the Agency's final response, September 9, 2014, EPA initially denied the Plaintiff's FOIA request for this information because the Agency determined that

affected businesses asserted claims of CBI. All segregable material in the Exemption 4 withholdings that was not claimed as CBI has been released to the Plaintiff.

42. Under EPA's regulations, when information claimed as CBI is the subject of a FOIA request, EPA initially withholds the records in order to contact the affected business and the appropriate EPA legal office will complete a final administrative determination of whether the claimed CBI is entitled to confidential treatment. 40 C.F.R. § 2.204(d)(1)(i)(ii) and (e). EPA R4's Office of Regional Counsel, the appropriate legal office, has initiated this process. The affected businesses have 15 working days after their receipt of EPA's written notice to submit comments in support the CBI claim. Once the business's substantiation is received, Region 4's Office of Regional Counsel will review relevant documents and the responsible EPA program office's comments concerning the appropriate substantive criteria. *Id.*, 40 C.F.R. § 2.204(f). If the Office of Regional Counsel determines that the information is entitled to confidential treatment for a specific period requested by the business, then EPA maintains the information in confidence for that period. *Id.*, § 2.205(e). If, however, the EPA determines that the information is not entitled to confidential treatment (an adverse confidentiality determination), the business has 10 working days to seek judicial review, including preliminary injunctive relief against disclosure. *Id.*, 40 C.F.R. § 2.205(f)(2). The ten-working day period may be extended upon approval by EPA under conditions outlined in 40 C.F.R. § 2.205(f)(3). After receiving an adverse confidentiality determination, the affected businesses have a right to sue EPA to enjoin disclosure, a process that itself would take additional time to complete.

    **4**.    *FOIA Exemption 6.*

43. FOIA Exemption 6 exempts from disclosure "personnel and medical files and similar files" when the disclosure of such information would constitute a clearly unwarranted

invasion of personal privacy. When withholding information pursuant to this exemption, EPA is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting this exemption, EPA reviewed each item of privacy protected information to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue. In conducting this analysis, EPA determined the public interest in disclosure of this information by evaluating whether the information in question would shed light on EPA's performance of its mission to protect human health and the environment.

44. The Agency used Exemption 6 to protect the names and identities of private citizens who had their property sampled for contaminants or are otherwise involved with the 35th Ave. Site. Most of the personal information withheld has been redacted from Preliminary PRP search reports. The information applies to and is identified with a particular individual. Release of this information would constitute a clearly unwarranted invasion of personal privacy and would not reveal the operations or activities of the Federal government in any meaningful way. The harm to the individual as a result of the disclosure would outweigh the public interest in such disclosure. The documents containing Exemption 6 redactions still clearly demonstrate EPA's performance of its mission without disclosing the personal identifiable information.

    **B.**    **Gasp Request *Vaughn* Index.**

45. The majority of entries in the *Vaughn* index for the Gasp request cite the Exemption 5's deliberative process, but some documents are redacted pursuant to the attorney-client privilege and attorney work-product privilege. Ex. H. Multiple records or portions of records were withheld under two or three of Exemption 5's privileges. The index identifies the specific privilege or privileges used for each record.

       *1.*      *Exemption 5 Deliberative Process Privilege.*

    46.    Exemption 5 includes the deliberative process privilege, which applies to pre-decisional and deliberative information. The records withheld under Exemption 5's deliberative process privilege are hand written notes, draft documents, work and case management plans, and memoranda concerning to EPA decision-making processes at the 35th Ave. Site as well draft internal correspondence in preparation of a response to an inquiry from the Birmingham Mayor's office. The majority of information withheld under Exemption 5 falls into the following categories: (1) email comments discussing the 35th Ave. 105(d) petition; (2) email discussions about the ABC Coke/Drummond Notice to Deny the South Tarrant petition; and (3) email discussions about proposed work plans of a proposed contractor concerning actions at the ABC Coke/Drummond facility as well as contractors' projected expenses. The *Vaughn* index describes each individual document in further detail.

    47.    The withheld emails generally contain recommendations, analyses, opinions, and advice pertaining to proposed actions at the 35th Ave. Site and specifically relating to the Gasp petition and the decision to conduct a PA. EPA employees prepared the withheld information to assist EPA decision-makers leading up to actions and decisions about the site and the petition. After receiving the petition, the Agency had to evaluate it and prepare a response. These tasks required the give-and-take of an analytical process among Agency staff. To determine if further investigation was necessary, as the petition requested, multiple employees with various expertise had to communicate and deliberate. These communications occurred at all stages leading up to an agency decision to conduct a PA and therefore are predecisional. Agency staff routinely email one another, providing and responding to suggestions as they draft documents or answer inquiries from their peers. Email operates as a way for EPA employees to communicate quickly,

candidly, and informally in order to carry out the decision-making process promptly and efficiently. The withheld information does not represent an official Agency decision or policy, but reflects comments or decisions in development.

48. Release of these deliberative documents, including emails, would have a chilling effect on the Agency's ability to have frank, internal discussions among federal agencies' staff about the issues and actions taking place at the 35th Ave. Site and the Agency's response to the Gasp petition. Disclosure of emails containing these discussions would severely hamper the efficient day-to-day workings of EPA as individuals would no longer feel free to discuss their ideas and advice in email messages. The resulting lack of candor would impact EPA's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, release of draft material would cause public confusion due to disclosure of reasons and rationales that were not in fact ultimately the grounds for EPA or U.S. Government's final comments or decisions involving the site.

### 2. *Exemption 5 Attorney-Client Privilege.*

49. EPA withheld portions of approximately five records under FOIA Exemption 5's attorney-client privilege. The protected communications between Agency attorneys and Agency clients relating to legal advice concerning the response to the petition and actions related to the 35th Ave. Site. In response to the petition, the Agency ultimately determined that further analysis of the petition's claims are necessary under CERCLA. In order to make that determination, agency attorneys and clients had to exchange questions and apply law to available facts. When preparing a response to a petition, the primary focus is to review existing information and the law to identify any possible threats to posed to the public health, welfare, or the environment, and to determine if further investigation is warranted. To accomplish this, EPA client offices

regularly raise questions to their counsel to help identify different legal options and requirements for a petition response. The withheld records or portions of records reflect confidential legal advice related to issues at the site concerning the applicability of CERCLA, including applicability of EPA statutes and regulations and possible legal options related to EPA's evaluation and response to the petition. The *Vaughn* index explains for which documents the attorney-client privilege applies.

50. One responsive document is withheld in full pursuant to attorney-client privilege. That document is an email chain between EPA employees, an EPA attorney and a U.S. Department of Justice ("DOJ") attorney. This email chain raises questions between an EPA attorney and her EPA program client. It also contains a discussion regarding a legal question between the EPA attorney and a DOJ attorney representing the Agency. The information in these records was kept confidential and not transmitted outside the U.S. Government.

### 3. *Exemption 5 Attorney-Work Product Privilege.*

51. Exemption 5 of the FOIA also protects attorney work product, or material that is prepared by or at the direction of an attorney in anticipation of litigation. The same document withheld in full under the Attorney Client privilege referenced above in paragraph 50, is also being withheld in full under the attorney work-product privilege. Since 2011, EPA's Superfund Division has been involved in interagency coordination and internal discussion concerning the status of the 35th Ave. Site. Between 2011 and 2012, EPA engaged in significant discussions and negotiations with Walter Coke, a PRP, to conduct the sampling investigation at the Site. It became evident, that in light of the high degree of public interest and size/scope of the Site, that any EPA action would likely be challenged in court, as it since has been. As evidence of this expected litigation, in December 2012, the Agency implemented a litigation hold to preserve all

relevant records. This document reflects work product of Agency and DOJ attorneys in anticipation of such litigation.

C. **Segregability**

52. All responsive documents were reviewed line-by-line for segregability to determine if they were releasable in full or in part. During this process, releasable material was reviewed line by line for segregability. All segregable material in this category has been released. Where there is no segregable factual information that could be released without revealing protected deliberative documents or attorney-client communications concerning legal matters, the documents have been withheld in full. To the extent there are facts in the attorney-client privileged or attorney work product privileged records, the selection of those facts are an integral part of the process of advising EPA decision-makers of legal issues. Release of the factual material would also deprive the Agency of the benefit of confidential legal advice by allowing the scrutiny of the select facts that informed the specific advice from the EPA attorney.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this day of March 23, 2016, in Atlanta, Georgia.

_____
LouAnn Gross
Chief of the Freedom of Information and Records
Management Section
Region 4
U.S. Environmental Protection Agency